**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

Shari B.,[1]                                            Case No. 24-cv-3901 (SGE)

                    Plaintiff,

          v.                                              **ORDER**

Frank Bisignano,[2]
_Acting Commissioner of Social Security,_

                    Defendant.

_____

          This matter is before the undersigned United States Magistrate Judge for disposition

pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Plaintiff Shari B.

("Ms. B") seeks judicial review of the final decision of the Commissioner of Social

Security Administration ("Defendant") denying her application for disability insurance

benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over

Ms. B's claims under 42 U.S.C. § 405(g). Both parties consented to the disposition of the

present case by the undersigned Magistrate Judge under Pursuant to 28 U.S.C. § 636(c).

And both Ms. B and Defendant have fully briefed their positions. (Dkt. 11; Dkt. 14.) For

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

[2] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025, and is substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

the reasons below, the Court **DENIES** Ms. B's request for relief, and **GRANTS** Defendant's request for relief.

## BACKGROUND

On December 16, 2019, Ms. B applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (R. 164-70, 975.)[3] She alleged disability beginning on July 25, 2019. (R. 164.) Her claim was denied initially and on reconsideration. (R. 88-100.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 94-100.) After a hearing, the ALJ found Ms. B was not disabled. (R. 12-23.) Ms. B appealed the ALJ's decision, and the United States District Court remanded the case back to the ALJ. (R. 1043-69.) The Social Security Appeals Council then issued an Order remanding the case back to an ALJ to follow the District Court's ruling. (R. 1070-74.)

On remand, a different ALJ conducted another hearing on April 30, 2024. (R. 989-1016.) On June 14, 2024, after considering the entire record and additional evidence submitted after the case was remanded, the ALJ issued the hearing decision. (R. 954-982.). The ALJ determined that Ms. B was not disabled. (R. 975.) In reaching this decision, the ALJ proceeded through the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520.[4] At step one, the ALJ found Ms. B had not engaged in substantial gainful

---

[3] The Court refers to the Administrative Record in this Order as "R." followed by the page number located in the lower-right hand corner.

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the

activity since the alleged onset date in July 2019. (R. 959-60.) At step two, the ALJ found Ms. B had the following severe impairments: seronegative rheumatoid arthritis; a left knee disorder with osteoarthritis and a degenerative tear of the posterior horn of the left medial meniscus; and a lumbar spine disorder (R. 960-61.) The ALJ also determined that Ms. B had the following non-severe impairments: osteoporosis; diabetes mellitus; stage II kidney disease; a left renal cyst; an aneurysm of the ascending thoracic aorta; left should disorder associated with left calcific tendinitis; left acromioclavicular and glenohumeral joint arthritis; left adhesive capsulitis and left shoulder impingement syndrome; right foot disorder; left foot disorder; and anxiety. (R. 960-61.) And the ALJ determined that Ms. B did not have a medically determinable impairment which would cause cyclical vomiting. (R. 963.)

At step three, the ALJ determined that Ms. B did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under appendix 1 to subpart P of part 404. (R. 963-64.) After step three but before proceeding to

---

ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's residual functional capacity, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

step four, the ALJ found that from July 25, 2019 to July 17, 2023, Ms. B had the residual functional capacity ("RFC") to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) except the claimant was able to lift and/or carry 20 pounds occasionally, 10 pounds frequent, stand and/or walk up to 2 hours in an 8-hour workday, sit up to 6 hours in an 8-hour workday. The claimant could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds. The claimant could occasionally balance (as defined in the Selected Characteristics of Occupations), stoop, kneel, crouch, crawl. The claimant could frequently handle, and finger. The claimant could have no more than occasional exposure to work around hazards such as dangerous moving machinery and unprotected heights.

(R. 964.) Then the ALJ determined that from July 18, 2023, through the date of the decision, Ms. B could stand or walk up to four hours in an eight-hour work day but could have no exposure to dangerous moving machinery and unprotected heights. (R. 969.) At step four, the ALJ found Ms. B unable to perform past relevant work. (R. 971.) At step five, the ALJ found—based on the testimony of a vocational expert who considered Ms. B's RFCs above—that there were jobs that existed in significant numbers in the national economy that Ms. B could have performed and so she was not disabled. (R. 971-74.)

Ms. B sought review from the Appeals Council, which found no basis for changing the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) On October 14, 2024, Ms. B filed a Complaint against the Commissioner seeking judicial review of the second decision under 42 U.S.C. § 405(g). (Dkt. 1.)

### STANDARD OF REVIEW

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Under this review, the District Court is limited to a determination of "whether the ALJ's decision

4

'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. *See* Social Security Ruling 96-8p.

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not alone prevent a particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the ALJ's finding merely because evidence exists in the administrative record to support a conclusion contrary to the Commissioner's findings. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quotation omitted). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.*

## ANALYSIS

### I.       Cyclical Vomiting

Ms. B argues that the ALJ should have considered her subjective complaints of cyclical vomiting in determining her RFC. (Dkt. 11 at 10-12.)

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is medically determinable if it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 404.1529(b); 20 C.F.R. § 404.1521. Additionally, the impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. A claimant's "statement of symptoms, a diagnosis, or a medical opinion" are not used "to establish the existence of an impairment." *Id.* It was Ms. B's burden to prove that her vomiting condition was a medically determinable impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

The ALJ determined at step two that Ms. B's vomiting was not a medically determinable impairment. (R. 963.) Once "medical signs or laboratory findings show…a medically determinable impairment," then an ALJ evaluates the factors in 20 C.F.R. § 404.1529(c) to determine a claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). Thus, ALJ's are not required to consider non-medically determinable impairments in formulating

6

a claimant's RFC. *See Lane v. Colvin*, No. 16-cv-00364 (MJD/KMM), 2016 WL 7239116, at * 9 (D. Minn. Sept. 27, 2016) ("Therefore, the ALJ was not required to consider such a non-medically determinable impairment in making the RFC assessment."), *R&R adopted*, 2016 WL 7234089 (D. Minn. Dec. 14, 2016); *Chapman v. Kijakazi*, No. 1:20-cv-125 (PLC), 2022 WL 2064889, at * 4 n.3  (E.D. Mo. June 8, 2022) ("A claimed condition which is not "medically determinable"   need   not   be   considered   when determining a claimant's RFC.") (citation omitted); *Karr v. Kijakazi*, No. 2:20-cv-00037 (NCC), 2021 WL 4399479, at * 5 (E.D. Mo. Sept. 27, 2021) ("As a preliminary matter, although Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's shortness of breath in his RFC determination, Plaintiff does not appear to raise any dispute as to the ALJ's conclusion that his shortness of breath was not a medically determinable impairment. As such, the ALJ was not required to review or include limitations related to that impairment."); *Ashley P. v. Comm'r of the SSA*, No. 2:24-cv-00696, 2025 WL 951102, at *12 (S.D. Ohio Mar. 31, 2025) ("Significantly, an ALJ is not required to consider impairments that are not medically determinable when assessing a claimant's RFC"). Contrary to Ms. B's argument, the ALJ did not need to consider Ms. B's vomiting in formulating her RFC.

Ms. B's argument regarding the ALJ's dismissal of her vomiting complaints and the ALJ's failure to consider her cyclical/chronic vomiting in the RFC analysis is unclear. To the extent that Ms. B's argument challenges the ALJ's step two finding that her vomiting was not a medically determinable impairment, the Court will address the issue out of an abundance of caution.

Ms. B argues the ALJ's RFC decision is not based on substantial evidence because the ALJ did not rely on Ms. B's subjective testimony and did not cite: (1) an endoscopy in January 2024[5] suggesting the possibility of inflammatory bowel disease, (2) Ms. B taking Amitriptyline and Zofran, and (3) "medical records" that document cyclical vomiting over "at least a 4-year period." (Dkt. 11 at 11-12.)

In deciding that Ms. B's vomiting was not a medically determinable impairment the ALJ explained the following:

> At the hearing, the claimant alleged that she experiences cyclical vomiting on a daily basis. Importantly, neither a claimant's subjective report of symptoms nor even a mere diagnosis is sufficient, by itself, to establish the existence of a medically determinable impairment. (20 CFR 404.1508, 404.1529). Rather, the record must contain evidence of an acceptable medical source documenting objective clinical signs or laboratory results of a mental or physical abnormality to establish it as a medically determinable impairment. (20 CFR 404.1508, 404.1529). In the present case, the record does not contain evidence of an acceptable medical source documenting objective clinical signs or tests results to support the allegations of an impairment causing cyclical vomiting. (See, e.g., Ex. 23F/187, 284). Accordingly, the undersigned must conclude that the evidence fails to establish the existence of a medically determinable impairment causing the claimant's reported vomiting. Even assuming solely for the sake of argument that the claimant does have an as yet undiagnosed impairment causing her alleged vomiting, the undersigned finds it to be nonsevere as there is no evidence of record that would reasonably support a conclusion that any such alleged disorder has resulted in an effect on the claimant's ability to work that has persisted, or is expected to persist, at a significant level for at least 12 continuous months.

---

[5] Ms. B references an endoscopy occurring in July 2024 but cites to an endoscopy occurring in January 2024. (Dkt. 11 at 11 (citing R. 1313).) The Court assumes this was a typographical error and evaluates only the endoscopy occurring in January 2024.

(R. at 963.) As noted above, a plaintiff must prove an impairment with "objective medical evidence[6] from an acceptable medical source" [7] and an ALJ will not consider a "claimant's statement of symptoms, a diagnosis, or a medical opinion." 20 C.F.R. § 404.1521. Of import here, the ALJ noted that there was no "evidence of an acceptable medical source documenting objective clinical signs or test results to support" a cyclical vomiting impairment and Ms. B's "subjective report of symptoms" cannot establish a medically determinable impairment. (R. 963.)

Notably, Ms. B does not argue the medical records she points to constitute "objective medical evidence" from an "acceptable medical source" as required by 20 C.F.R. § 404.1521. Rather, she argues the ALJ should have considered (1) her testimony, (2) an endoscopy[8] suggesting the "possibility" of inflammatory bowel disease, and (3) three pages of the 2075-page record which mention vomiting but do not document clinical signs, test results, or laboratory findings regarding cyclical vomiting. (Dkt. 11 at 11 (citing R.

---

[6] "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f); *see also* 20 C.F.R. § 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both, as defined in § 404.1502(f)."); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption.")

[7] An "acceptable medical source" includes licensed physicians, licensed psychologists, licensed advanced practice registered nurses, and licensed physician assistants, among others. 20 C.F.R. § 404.1502(a).

[8] Plaintiff argues the ALJ should have considered an endoscopy that occurred in July 2024. (Dkt. 11 at 11.) The cited record demonstrates that the endoscopy actually occurred in January 2024. (R. 1313-14.)

9

1373, 1388, 1411).) Under the law, however, the ALJ could not consider Ms. B's testimony in determining whether her vomiting was a medically determinable condition. *See* 20 C.F.R. § 404.1521. And while the endoscopy record constitutes a laboratory finding, it suggests "the possibility of mild inflammatory bowel disease," it does not on its own suggest a medically determinable impairment of cyclical vomiting. (R. 1313-14.) Given the absence of objective medical evidence showing Ms. B had a more severe vomiting issue during the relevant period, the Court cannot conclude that the ALJ erred in excluding the complained of condition in the RFC analysis.

## II.    Claimant's Ability to Sit

Next, Ms. B argues the ALJ's finding that she can sit for six hours a day is not supported by substantial evidence. (Dkt. 11 at 5.) Specifically, Ms. B asserts that the ALJ improperly ignored the opinion of her treating rheumatologist, Dr. Schiebe, and Ms. B's testimony regarding her sitting limitations in formulating the RFC.[9]

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The claimant bears the burden of establishing her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The Eighth Circuit has held that "a 'claimant's [RFC] is a medical question.'" *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). But an RFC is ultimately an administrative assessment to

---

[9] The Court does not address Defendant's argument regarding the ability of an ALJ to draw reasonable inferences from medical reports because Ms. B does not actually argue that the ALJ made an impermissible inference, nor any inference at all for that matter. (*See* Dkt. 14 at 10-22, and Dkt. 11 at 5-8.)

be determined by the ALJ. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018). In other words, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *see also Lauer*, 245 F.3d at 704 ("Some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.") (cleaned up).

But "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Noerper v. Saul*, 964 F.3d 738, 744-45 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). The Court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615.

The Court finds Ms. B's arguments uncompelling. First, the ALJ evaluated Dr. Schiebe's medical opinion and found it to be unpersuasive due to the very limited opportunity for examination, and inconsistencies with the objective medical evidence and Dr. Schiebe's own treatment notes. (R. 969-970.) Despite Ms. B's suggestion that the ALJ

should have credited Dr. Schiebe's opinion that she can sit only one hour in an eight our period, the Court's review is limited to "whether the ALJ adequately analyzed persuasiveness…not whether [it] agree[s] with the ALJ's evaluation of the record evidence. . . ." *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025). Ms. B does not argue the ALJ erred in reviewing Dr. Schiebe's medical opinion, or that the ALJ should have given the opinion more weight. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) (rejecting plaintiff's argument that ALJ should have given more weight to opinion where ALJ "provided legitimate reasons for discounting"). Rather, she points to Dr. Schiebe's opinion as evidence that could support a different result which essentially invites the Court to reweigh the evidence and substitute the Court's opinions or findings for those of the ALJ, which it cannot do. *See id.* ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence.").

Second, the ALJ considered Ms. B's testimony regarding the limiting effects of her physical impairments and found that it was not consistent with the objective medical evidence or her reported daily activities. (R. 966-67.) Essentially, Ms. B merely highlights portions of her testimony which she believes supports her claim and asks this Court to reevaluate said evidence in order to reach a different conclusion than that of the ALJ. *See Della S. v. Saul*, No. 20-cv-40 (DSD/LIB), 2021 WL 640718, at * 9 (D. Minn. Jan. 28, 2021), *R&R adopted*, 2021 WL 638166 (D. Minn. Feb. 18, 2021) ("Plaintiff fails to point to any specific portion of the record that she believes the ALJ ignored; instead, Plaintiff asserts that the ALJ should have credited different portions of the records which the ALJ

12

reviewed.") The Court may not, however, substitute its own judgment for that of the ALJ. *Schmitt*, 27 F.4th at 1361. [10]

### III.    Change in RFC on July 18, 2023

Lastly, Ms. B argues the ALJ's finding that she could stand and walk for four hours in an eight-hour workday as of July 18, 2023 is not supported by substantial evidence. (Dkt. 11 at 9.)

The determination of Ms. B's ability to stand in the pre-July 18, 2023 RFC is instructive here. In evaluating Ms. B's ability to stand the ALJ explained:

> The objective medical evidence is not completely consistent with the claimant's allegations regarding the intensity, frequency, or persistence of the limiting effects of her severe physical impairments. Nevertheless, the changes to the claimant's lumbosacral spine and left knee, the medical providers' comments indicating that reduced exertion has improved her joint pain, and the claimant's arthritis pain complaints, in combination with the evidence concerning claimant's left foot and right foot disorders, which the evidence indicates are nonsevere for lack of a significant effect of the required duration, reasonably support limiting her to a reduced range of light exertion in which she is able to stand and/or walk up to 2 hours in an 8-hour workday.

(R. 966.) In making the determination that Ms. B's RFC changed *after* July 18, 2023, the ALJ also addressed Ms. B's other lower body impairments, specifically stating that "[t]he evidence of record beginning on July 18, 2023 does not document any significant changes in the treatment of the claimant's rheumatoid arthritis, her lumbar spine disorder, or her left knee disorder." (R. 969.) However, the ALJ found that Ms. B's foot condition had improved after surgery, relying on an appointment at which Ms. B reported she was doing

---

[10] Other than Dr. Schiebe's opinion and her testimony, Ms. B does not otherwise highlight any evidence in the record which she alleges the ALJ failed to consider. (Dkt. 11 at 5-8.)

13

well, had transitioned to normal footwear, helped at a daycare, and had no residual pain. (R. 969-970.) The ALJ concluded that because Ms. B's foot condition had improved, it no longer contributed to her limitation to stand or walk. Because Ms. B's other lower body conditions had not changed and her foot conditions had improved, the ALJ determined Ms. B could stand or walk up to four hours in an eight-hour work day. (R. 969.)

Ms. B argues the change in her RFC is not supported by substantial evidence because (1) the ALJ relied solely on her post foot surgery condition to determine that her capacity to stand had improved, and (2) her testimony contradicts any improvement in her ability to stand. (Dkt. 11 at 9-10.) The Court finds Ms. B's argument unpersuasive. The two pages of medical records that Ms. B points to mention her SI joint and lumbar spine pain, but do not demonstrate that there were significant changes to those conditions. (Dkt. 11 at 9 (citing R. 1323, 1381).) In other words, Ms. B does not point to records which demonstrate significant changes in her lumbar spine or SI joint, or that show her foot conditions did not improve as the ALJ discussed. Moreover, Plaintiff's highlighting of her testimony, and these two portions of the record, which she believes support her argument, invite the Court to reweigh the evidence and reach a different conclusion than the ALJ, which the Court cannot do. *Schmitt*, 27 F.4th at 1361; *Hilkemeyer*, 380 F.3d at 445; *see also Adamczyk v. Saul*, 817 F. App'x 287, 290 (8th Cir. 2020) ("The fact that there was some medical evidence supporting [Plaintiff's] position concerning the severity of her symptoms does not mean that the ALJ's decision was not supported by substantial evidence.") (citation omitted). In sum, Ms. B does not argue that the record "as a whole" lacks substantial evidence to support the RFC finding, rather Plaintiff points to evidence

which she believes supports an opposite finding. *Lucas*, 960 F.3d at 1068.  The Court will not reweigh the evidence and substitute its opinions for those of the ALJ supported by substantial evidence in the record as a whole. *Id.*; *Schmitt*, 27 F.4th at 1361.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Ms. B request for relief is **DENIED**; and

2.  The Commissioner's request for relief is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: February 23, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge